**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | MARIO L. BLANCO, | : | Chapter 13 |
| | | : | |
| | Debtor | : | Bky. No. 14-11620 ELF |
| | | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

Debtor, Mario L. Blanco ("the Debtor"), commenced this chapter 13 bankruptcy case on March 4, 2014.  By order entered on September 2, 2014, I dismissed the case motion of the Chapter 13 Trustee ("the Trustee").  The Debtor filed a "Motion to Vacate Dismissal" on September 10, 2014.  On October 8, 2014, after a hearing, I denied the Debtor's motion.  On October 17, 2014, the Debtor filed a Notice of Appeal to the district court.

I issued both the September 2, 2014 dismissal order and the October 8, 2014 order denying the Motion to Vacate Dismissal from the bench.  This Memorandum is entered to: (1) amplify the reasons for these actions; and (2) provide the district court with an historical narrative so that it may analyze the issues raised in the appeal in their proper context.  See L.B.R 8001-1(b).

## II.  THE DEBTOR'S PRIOR CASE

The Debtor filed his first bankruptcy case on May 22, 2013 ("the First Case").  (See Bky. No. 13-14533).  The Debtor did not file his bankruptcy schedules, statement of financial affairs or a chapter 13 plan with the petition.  (See Bky. No. 13-14533, Doc. #1).  Upon request of the Debtor, I granted an extension of time to June 24, 2013 for the Debtor to file the required

documents. (Bky. No. 13-14533, Doc. #10).

On June 27, 2013 and July 2, 2013, Ocwen Loan Servicing, LLC ("Ocwen") filed two (2) secured proofs of claim, both on behalf of Deutsche Bank Trust Company Americas, as trustee ("Deutsche Bank"). Each proof of claim asserted that the claim was secured by real property.

The first proof of claim was based on a note secured by a mortgage on 8705 Monterey Bay Loop, Bradenton, Florida. In the proof of claim, Ocwen represented that:

- the balance due on the mortgage was $376,264.68;
- the pre-petition arrears were $75,574.75; and
- the mortgage was in default for 33 months, back to August 1, 2010.

The second proof of claim was based on a note secured by a mortgage on 8709 Monterey Bay Loop, Bradenton, Florida. In the proof of claim, Ocwen represented that:

- the balance due on the mortgage was $367,209.72;
- the pre-petition arrears were $76,081.92; and
- the mortgage was in default for 33 months, back to August 1, 2010.

After the Debtor failed to file his bankruptcy schedules, statement of financial affairs and chapter 13 plan, I dismissed the case by order entered July 10, 2013. (Bky. No. 13-14533, Doc. #16).

### III.  THE PRESENT CASE

#### A.  The Debtor's Schedules

The Debtor filed the current case on March 4, 2014.

On April 4, 2014, the Debtor filed his bankruptcy schedules, statement of financial affairs

and chapter 13 plan.  (See Doc. #'s 14, 15).

In his bankruptcy schedules, the Debtor represented:

- in Schedule A, that he owned three (3) properties in Pennsylvania and three (3) properties in Florida, with a total value of approximately $1.5 million;[1]

- in Schedule D, that three (3) properties were subject to mortgages held by Chase Home Mortgage, Chase Equity and Bank United, with claims totaling approximately $650,000.00;[2]

- in Schedule F, that he has four (4) unsecured creditors (2 credit cards and 2 utility companies) with a total debt of $8,400.00;

- in Schedule I, that the Debtor was retired with monthly income of $2,130.00, derived from Social Security and a pension, supplemented by his wife's gross (pre-payroll deduction) income of $26,000.00 (estimated);[3]

- in Schedule J, that his monthly expenses total only $1,605.00 and include no monthly obligations for mortgage payments.

(Doc. #14).

---

[1] The three (3) Florida properties disclosed in Schedule A were: (a) 7931 Haven Harbour, Bradenton, FL; (b) 1785 Holton, Lakeland, FL; and (c) 11120 Kempton Vista, Riverview, FL.  None of the properties listed in Schedule A were referenced in the secured proofs of claim Ocwen filed in the First Case.  Perhaps the properties referenced in the secured proofs of claim Ocwen filed in the First Case were foreclosed upon prior to the filing of the Present Case?  Maybe.  But, there is no obvious reference to foreclosure of those properties in the Debtor's Statement of Financial Affairs.

[2] Schedule D did not correlate any of the mortgages to a specific property listed in Schedule A.

[3] The Debtor did not disclose any rental income in Schedule I, even though in Schedule A, he described several properties as "rental."  Also, in Schedule I, the Debtor stated that his wife's income was based on her employment as a health care employee for Continuous Home Care.  The income disclosure on Schedule I is supposed to be made on a monthly basis.  However, I consider it unlikely that Mrs. Blanco earns $26,000.00 per month providing in-home health care services.  Therefore,  I interpret the disclosures in Schedule I as a statement of her annual, not monthly, income.

## B. The Debtor's Chapter 13 Plan

On August 4, 2014, the Debtor also filed a chapter 13 plan ("the Plan"). (Doc. #15).

The Plan stated that total plan funding is "uncertain," but also stated that the Debtor would pay the Trustee $150.00 per month from May 2014 through May 2019. (Id.). Thus, assuming that the Debtor intended the payments to run for the 60 month maximum term, see 11 U.S.C. §1322(d), the Plan seemed to be funded at $9,000.00. The Plan further stated that the Debtor would make post-petition contractual instalment payments to the three (3) secured creditors identified in his Schedule D as follows:

- Chase Mortgage: $1,265.00/month
- Chase [Equity]: $600.00/month
- Bank United: $3,800.00/month

(Id.).

The Debtor's Plan also specially classified two (2) unsecured creditors (the two (2) credit card companies listed in Schedule F with claims totaling $7,200.00) and provided for them to be paid in full. (Id.).

Finally, the Plan stated that the treatment of various claims were "to be determine[d]." (Id.). These subjects included: pre-confirmation adequate protection payments to secured creditors, secured claims to be paid on modified terms, liens to be avoided and the order of priority of distribution by the Trustee. (Id.).

## C. The Secured Proofs of Claim Filed in the Case

Between June 4, 2014 and August 22, 2014, ten (10) proofs of claim were filed, nine (9) of which were claims secured by real property, as summarized in the table below.

| **CREDITOR** | **PROPERTY** | **TOTAL CLAIM** | **ARREARS** | **MONTHS IN ARREARS** |
|---|---|---|---|---|
| JP Morgan Chase | 624 Foster Avenue, Springfield, PA | $60,477.47 | -0- | N/A |
| Bank of America | 11120 Kempton Vista Dr., Riverview, FL | $414,376.48 | $106,199.52 | 44 |
| Bank of America | 11804 Stonewood Gate Dr., Riverview, FL | $325,082.44 | $55,659.47 | 44 |
| Bank of America | 11802 Stonewood Gate Dr., Riverview, FL | $369,739.31 | $63,012.96 | 44 |
| Bank of America | 12009 Hampshire Field Ct., Riverview, FL | $289,250.81 | $52,919.10 | 44 |
| U.S. Bank, N.A | 1785 Holton Road, Lakeland, FL | $282,008.94 | $75,094.48 | 44 |
| Wilmington Savings Fund Society, FSB, | 3807 Rollingsford Circle, Lakeland, FL | $280,774.06 | $70,817.44 | 45 |
| JP Morgan Chase, NA | 624 Foster Drive, Springfield, PA | $234,142.06 | 0.00 | N/A |
| Deutsche Bank | 8705 Monterey Bay Loop, Bradenton, FL | $394,021.84 | $93,063.68 | 43 |
| | | $2,649,873.41[4] | $516,766.65 | **TOTALS** |

---

[4] I note that, on its face, Schedule D suggests that the Debtor is not eligible to be a chapter 13 debtor. 11 U.S.C. §109(e) provides, in pertinent part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, **secured debts of less than $1,149,525** . . . may be a debtor under chapter 13 of this title.

(emphasis added).

**D. The Debtor's Litigation with Deutsche Bank**

**1.**

On April 25, 2014, Deutsche Bank (acting through its loan servicer, Ocwen) filed an Objection to Confirmation of the Debtor's Plan. (Doc. #23). In the Objection, Deutsche Bank asserted that the Plan failed to comply with 11 U.S.C. §1325(a)(5)(B)(i) and (ii) because it lacked sufficient funding to pay Deutsche Bank's pre-petition arrearage claim of $97,203.78.[5] Deutsche Bank also stated that the Plan did not provide for the post-petition contractual monthly instalments of $2,112.93. (Deutsche Bank Objection ¶4.b.). See 11 U.S.C. §1322(b)(5) (plan may provide for cure of pre-petition default, with maintenance of payments while the case is pending).

On June 11, 2014, the Debtor responded to Deutsche Bank's Objection to Confirmation by filing a Motion to Strike Deutsche Bank's Objection to Confirmation ("the Motion to Strike"). (Doc. #46). Though rambling and largely incoherent, the thrust of the Motion to Strike appeared that Deutsche Bank lacked standing to object to the Debtor's Plan because there was "no evidence in the record that [Deutsche Bank] is a *bona fide* creditor . . . and/or holder in due course in possession of a verified claim." (Debtor's Motion to Strike ¶12) (emphasis in original). The Debtor also stated in section heading "V" that "It Is Well Known Banks and Bankers Cannot Be Trusted Absent Strict Proof."[6]

---

[5] The amount stated in the Objection is slightly higher than the amount in the proof of claim. The Objection does state that its recitation of the arrearage was "an approximate amount." (Deutsche Bank Objection ¶4.a.ii.).

[6] In the body of Section V, the Debtor stated "[i]t is well known that [Deutsche Bank] and
(continued...)

The Debtor did not self-schedule a hearing on the Motion to Strike as required by L.B.R 5070-1, 9014-3(c). To bring some procedural order to the case, I issued an order on June 16, 2014, denying the Debtor's Motion to Strike without prejudice "to the Debtor['s] right to assert all of the arguments set forth in the Motion at the confirmation hearing or at the hearing on the Trustee's pending Motion to Dismiss Case or at the hearing on any objection the Debtor may file to Deutsche Bank's proof of claim." (Doc. #30).[7]

**2.**

On June 24, 2014, Deutsche Bank filed a Motion for Relief from the Automatic Stay ("the §362 Motion"). (Doc. #36). In the §362 Motion, Deutsche Bank alleged <u>inter alia</u>:

- on June 29, 2006, the Debtor granted a note, secured by a mortgage on 8705 Monterey Bay Loop, Bradenton, FL to Deutsche Bank's predecessor in interest; and

- the Debtor failed to pay three (3) post-petition monthly instalments under the note.

(§362 Motion ¶¶3,8).

Pursuant to L.B.R 5070-1 and 9014-3(c), Deutsche Bank scheduled a hearing on the

---

[6](...continued)
Ocwen have no credibility and cannot be trusted . . . to tell the truth." (Debtor's Motion to Strike ¶32).

[7] Also, as summarized in the table in Part III.C, Bank of America ("BOA") filed four (4) claims secured by real property. Between July 8, 2014 and July 15, 2014, BOA filed three (3) separate Objections to Confirmation. (Doc. #'s 47, 48, 51). Later, on August 29, 2014, U.S. Bank, N.A. also filed an objection to confirmation. (Doc. #75). All of these objections were on the same ground – that the Plan did not provide funding for a cure of the substantial pre-petition arrears. Because the case was dismissed, it was unnecessary to address the various objections to confirmation of the Debtor's plan.

§362 Motion for July 17, 2014 and notified the Debtor of the hearing and the July 11, 2014 deadline for filing a response. (Doc. #37). The Debtor did not file a timely response, but on July 14, 2014, just three (3) days before the scheduled hearing, filed an Answer incorporating by reference the Motion to Strike and its contention that Deutsche Bank lacked standing to obtain relief from the court. (Doc. #49).

At no time in his written response, or at the July 17, 2014 hearing, or at any subsequent hearing did the Debtor dispute Deutsche Bank's central contention – that he had made no post-petition mortgage payments to Deutsche Bank. See, e.g., In re Stuart, 402 B.R. 111, 122 (Bankr. E.D. Pa. 2009) (evidence of a debtor's post-petition default in mortgage payments meets a mortgagee's initial burden of production in establishing "cause" for relief from the automatic stay under 11 U.S.C. §362(d)(1)) (citing cases). It was obvious from the Debtor's presentation that his sole defense to the §362 Motion was that Deutsche Bank lacked standing absent proof that it had possession of the original note.

At the July 17, 2014 hearing, Deutsche Bank, by Ocwen, appeared through counsel and did not dispute the general proposition put forward by the Debtor in his defense, i.e., Deutsche Bank had to demonstrate that it had standing to request any relief from the court by producing the note on which its claim was based. See generally In re Walker, 466 B.R. 271 (Bankr. E.D. Pa. 2012) (in context of objection to proof of claim, applying Pennsylvania law and holding that mortgagee-claimant must demonstrate that it has the legal right to enforce the note, which is frequently established by showing actual possession of the note). Consequently, Deutsche Bank requested a continuance of the hearing in order to produce the original note, which it claimed it had in its possession, to be authenticated through an out-of-town witness. In light of the

Debtor's untimely response, which left Deutsche Bank little time to gather its evidence for the hearing, I granted Deutsche Bank's continuance request over the Debtor's objection. The hearing was continued to August 21, 2014. (See Docket Entry No. 52).[8]

On August 21st, Deutsche Bank, by Ocwen, appeared through counsel, accompanied by its witness. The Debtor failed to appear. Nevertheless, Deutsche Bank made a record to establish its standing as the party entitled to relief. It produced for my inspection what appeared to be the original note, with what appeared to be original signatures.[9] Based on this record, I determined that Deutsche Bank had standing. In light of the Debtor's failure to make post-petition monthly instalment payments on the debt, I also determined that it was entitled to relief from the automatic stay, in See, e.g., In re Rambo, 2004 WL 231011, at *3 (Bankr. E.D. Pa. Jan. 29, 2004). On August 28, 2014, I entered an order granting Deutsche Bank relief from the automatic stay to exercise its rights and remedies under applicable nonbankruptcy law to foreclose on and obtain possession of the property located at 8705 Monterey Bay Loop,

---

[8] When I gave the Debtor the opportunity to present his position at the July 17, 2014 hearing, it was obvious that he was disadvantaged by a severe language barrier. English is not his native language. It appeared that he barely comprehended the nature of the proceedings or the arguments that had been put forward in the documents he had filed with the court (obviously ghost-written by someone else). However, the Debtor appeared at this hearing, accompanied by his wife. Mrs. Blanco is far more conversant in English and presented herself as fully cognizant of the legal and factual issues that the Debtor wished to present. The Debtor requested that she be permitted to speak for him. Despite some misgivings that his wife's assistance may rise to the level of the unauthorized practice of law, I granted his request as the only practical means of giving Mr. Blanco an opportunity to make his arguments to the court. I permitted Mrs. Blanco to speak on the Debtor's behalf at this hearing and at the subsequent hearings in this case.

[9] Understandably, given the requirements that it maintain possession of the note in order to enforce it, Deutsche Bank requested that only a copy be marked as an exhibit and that it retain possession of the original note. But, it handed the original note up to the bench for my review.

Bradenton, FL 34212.  (Doc. #72).[10]

### E. The Trustee's Motion to Dismiss

**1.**

On July 31, 2014, while Deutsche Bank's §362 Motion was pending, the Trustee filed a Motion to Dismiss the Case ("the Trustee's Motion") (Doc. #64).[11]  The Trustee asserted that the case should be dismissed for:

1. failure to provide evidence of business insurance coverage;

2. failure to provide evidence of business licensure;

3. ineligibility to be a debtor under chapter 13, see 11 U.S.C. §109(e));

4. unreasonable delay by failing to propose an adequately funded plan, see 11 U.S.C. §1307(c)(1); and

5. failure to make plan payments, see 11 U.S.C. §1326(a)(1).

(Id.).

The Trustee self-scheduled a hearing on the Trustee's Motion on September 2, 2014. (See Doc. #65).  At the September 2, 2014 hearing, the Trustee focused his attention on the fourth reason above, the Debtor's failure to propose a plan that adequately funded the arrearage

---

[10] That same day, August 28, 2014, the Debtor filed a Motion to Vacate the Order Granting Deutsche Bank Relief from the Automatic Stay ("the Motion to Vacate").  (Doc. #73).  Again, the Debtor did not self-schedule a hearing on the Motion to Vacate as required by L.B.R 5070-1 and 9014-3(c).  And again, to bring some procedural order to the case, I intervened by issuing a notice scheduling the hearing for September 18, 2014.  (Doc. #74).  No hearing occurred because the case was dismissed prior to that hearing.

[11] The Trustee had filed a Motion to Dismiss the Case previously, on May 23, 2014.  (Doc. #25).  That motion was withdrawn on July 29, 2014.  (Doc. #62).

claims of the creditors holding mortgages on his various properties.

In response, the Debtor offered no explanation as to how his proposed plan, which was funded at the level of $9,000.00, could adequately address claims for mortgage arrears in excess of $500,000.00. Instead, the Debtor's arguments focused on: his claim of entitlement to personally review the Deutsche Bank mortgage note, his assertion that his failure to appear at the August 21, 2014 hearing on the §362 Motion should be excused as being the result of a calendaring error and his request for another opportunity to review the note.

At the hearing, I rejected the Debtor's argument. I concluded that his desire to inspect the Deutsche Bank note could not provide any defense to the Trustee's claim that the case should be dismissed for unreasonable delay under 11 U.S.C. §1307(c)(1), particularly given the apparent futility of the plan. I simply failed to see how his inspection of the note would address the severe "under-funding" of the plan. However, before ruling, I also inquired whether there was any other reason why the case should not be dismissed in light of the disconnect between the Debtor's goal of preventing foreclosure of his properties and the paltry funding of the Plan, i.e., whether there was any other rehabilitative or reorganizational purpose to the case (other than the Debtor's effort to prevent a foreclosure of the property secured by the mortgages held by Deutsche Bank and other creditors). The Debtor offered no other rationale for the continued existence of the chapter 13 case. As a result, I granted the Trustee's Motion and entered an order of dismissal on September 2, 2014. (Doc. #80).

**2.**

The dismissal of the case was grounded in 11 U.S.C. §1307(c)(1), which authorizes the court to dismiss a case on the request of a party in interest for cause, including "unreasonable

-11-

delay by the debtor that is prejudicial to creditors." The determination whether cause exists to dismiss a chapter 13 case under §1307(c)(1) for unreasonable delay is left to the discretion of the bankruptcy judge. See In re Paulson, 524 Fed. App'x 306, 307 (8th Cir. 2013) (per curiam); In re Dempsey, 247 Fed. App'x 21, 25 (7th Cir. 2007) (nonprecedential); see also In re American Capital Equipment, LLC, 688 F.3d 145, 161 (3d Cir. 2012) (bankruptcy court decision to dismiss or convert a case under 11 U.S.C. §1112(b) is reviewed for abuse of discretion).

The general principle underlying the "unreasonable delay" was articulated in In re Wile, 310 B.R. 514, 517 (Bankr. E.D. Pa. 2004):

> In enacting the Bankruptcy Code, Congress carefully balanced the rights of debtors and creditors. For example, while the automatic stay enjoins creditor action against the debtor and her property, it provides the creditor with adequate protection of its interest in the debtor's property so that its position does not deteriorate while it is statutorily enjoined. Moreover, it is generally accepted that the debtor's burden to demonstrate that a reorganization is in process increases with the passage of time. Finally, because creditors' rights are constrained during the pendency of Chapter 13 proceedings, the Bankruptcy Code contemplates that a plan will be promptly confirmed so that payments to creditors may commence.

Id. at 517 (citations and footnotes omitted).

Stated slightly differently, there is no legitimate purpose for a debtor to remain in chapter 13, and thereby restrain creditors from exercising their rights under applicable nonbankruptcy law, if the debtor, after given fair opportunity to do so, has been unable to propose a chapter 13 plan that meets the confirmation requirements of 11 U.S.C. §1322 and §1325. See, e.g., Dempsey, 247 Fed. App'x at 25.

Cause exists for dismissal under section 1307(c)(1) when the chapter 13 debtor has been given a reasonable time to propose a viable plan and it is clear that the debtor will be unable to do so. See generally, e.g., In re Scott, 188 F.3d 509 (table), 1999 WL 644380, at *1 (6th Cir. 1999); In re Asken, 2007 WL 1056724, at *3-4 (Bankr. E.D. Pa. Apr. 3, 2007); In re Barrett, 149

B.R. 494, 498 (Bankr. N.D. Ohio 1993).  Similarly, a debtor's protracted inability to demonstrate the feasibility of a plan satisfies the requirement of "prejudice" to creditors.  See In re Yarborough, 2012 WL 4434053, *2, 4-5 (Bankr. E.D. Tenn. Sept. 24, 2012) (applying the same standard for dismissal under section 1307(c)(1) in denying a debtor's motion to convert a chapter 7 case to chapter 13).

In this case, based on the cavernous divide between the magnitude of the arrearage claims secured by the Debtor's real property and the Plan funding, the facial infeasibility of the Plan in light of the Debtor's income and expense disclosures,[12] the Debtor's apparent inability to grasp the need to present a plan that addressed the feasibility issue, his failure to take any action to present any plausible theory for a plan that would satisfy the requirements of 11 U.S.C. §1325(a) after almost six (6) months and his failure to articulate any other rehabilitative rationale for the chapter 13 case, I concluded that the Chapter 13 Trustee's request for dismissal of the case for undue delay that was prejudicial to creditors was appropriate.[13]

### G.  The Debtor's Motion to Reconsider the Dismissal Order

On September 10, 2014, the Debtor filed a Motion to Vacate Dismissal of the Case ("the Motion to Reconsider").  (Doc. #88).[14]  In the Motion, the Debtor asserted that he "never

---

[12]    One of the statutory plan confirmation requirements is that "the debtor will be able to make all payments under the plan and to comply with the plan."  11 U.S.C. §1325(a)(6).  The amount of the post-petition monthly instalments falling due on the various mortgages plus the plan payments that would be necessary to cure asserted pre-petition arrears in excess of $500,000.00 dwarf the Debtor's available income.

[13]    The chapter 13 trustee is a party in interest that can seek relief under section 1307(c). See In re Slaughter, 191 B.R. 135, 144–45 (Bankr. W.D. Wis. 1995).

[14]    The Debtor's motion did not use the proper nomenclature for its achieved purpose as it was the functional equivalent to a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e), made
(continued...)

received any notice of hearing on this matter [i.e., the Trustee's Motion to Dismiss the Case] and therefore, had no time to prepare." (Debtor's Motion to Reconsider ¶11).

For the reasons that follow, I was not persuaded that reconsideration was appropriate based on the Debtor's claim he lacked notice.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." E.g., Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986). It is an accepted legal principle that "courts should grant such motions sparingly because of their strong interest in finality of judgment." Griffin-El v. Beard, 2009 WL 1229599, at *3 (E.D. Pa. Apr. 30, 2009) (citations omitted).[15]

The docket reflects that the Trustee certified that he served the Motion to Dismiss on the

---

[14](...continued)
applicable to bankruptcy cases pursuant to Fed. R. Bankr. P. 9023. Therefore, I refer to the Debtor's motion as a Motion to Reconsider.

[15] "Motions for . . . reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." Ciena Corp. v. Corvis Corp., 352 F. Supp. 2d 526, 527 (D. Del. 2005). A motion for reconsideration may not be used to give a litigant a "second bite at the apple." See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995). A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one. A motion for reconsideration "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Brambles USA, Inc. v. Blocker, 735 F.Supp. 1239, 1240 (D. Del. 1990) (quoted in Bhatnagar, 52 F.3d at 1231). Therefore, it is "improper . . . to ask the Court to rethink what [it] had already thought through-rightly or wrongly." Glendon Energy Co. v. Bor. of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

PBI Performance Products, Inc. v. NorFab Corp., 514 F. Supp. 2d 732, 743-44 (E.D. Pa. 2007); accord, In re Kuhar, 2007 WL 2245912, *2 (Bankr. E.D. Pa. Aug. 1, 2007).

Debtor on July 30, 2014. (Doc. #64). The Debtor filed his "Opposition to Trustee's Third Motion to Dismiss" on August 18, 2014, stating inter alia, that the Trustee's grounds for dismissal were "frivolous" and "bald faced lie[s]." (Doc. #66). Moreover, the Debtor appeared at the September 2, 2014 hearing, despite his written claims that he was unaware of the Trustee's Motion to Dismiss in the Motion to Reconsider. In fact, the Debtor never claimed that he was surprised or unprepared to address the Trustee's Motion at the hearing on September 2, 2014.

Nor was the issue raised by the Trustee particularly complicated. The Trustee's Motion was premised largely on the fact that the Plan was underfunded and that even though almost six (6) months has passed since the Debtor commenced the case, the Debtor had taken no action to remedy the patently obvious defects in the Plan, other than filing an objection to a single claim (Deutsche Bank's proof of claim).[16] The Debtor did not need any more notice than he received in order to present some plausible theory in response to the Trustee.

Even at the hearing on reconsideration, several weeks after the September 2, 2014 hearing at which the Debtor claims unfair surprise, the Debtor did not present any type of coherent, credible reorganization theory that harmonized his minimal level of income with the enormity of his secured debt and pre-petition arrears. Instead, the Debtor's position continued to consist of nothing more than generalized complaints about the dishonesty of the mortgage lending industry, an ongoing plea that his failure to attend the August 21, 2014 Deutsche Bank stay relief hearing should be excused, a demand to visually inspect the Deutsche Bank mortgage

---

[16] Only after the dismissal of the case, on September 8, 2014, did the Debtor file objections to the other secured proofs of claim. On that date, he filed six (6) objections. Once the case was dismissed, there was no purpose to these objections. See In re Green Goblin, Inc., 2013 WL 588712, at *2 n.5 (Bankr. E.D. Pa. Feb. 13, 2013) ("The dismissal order terminates the bankruptcy estate . . . . If there is no bankruptcy estate, it is obvious that there is no reason to resolve an objection to a proof of claim that seeks a distribution against the (now) non-existent bankruptcy estate.").

note and a request that Deutsche Bank should be required to again undergo the expense of bringing the mortgage note to the courthouse.

In summary, the Motion to Reconsider failed to present: (1) newly available evidence; (2) an intervening change in the controlling law; or (3) any plausible argument that the court committed a clear error of law or that reconsideration is necessary prevent manifest injustice. See, e.g., North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); Allen v. J.K. Harris & Co., 2005 WL 2902497, at *1 (E.D. Pa. Nov. 2, 2005). Consequently, I denied the Motion to Reconsider by Order dated October 7, 2014. (Doc. #92).

The Debtor's appeal followed on October 17, 2014. (Doc. #96).

**Date: October 29, 2014**

                **ERIC L. FRANK**
                **CHIEF U.S. BANKRUPTCY JUDGE**

cc:    Mario L. Blanco
        624 Foster Drive
        Springfield, PA 19064